## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTIRCT OF ILLINOIS

| | | |
|---|---|---|
| **WILLIAM R. ROGERS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 20-cv-1116** |
| | ) | |
| **GREGORY HACKER, and BRAD WELLS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### COMPLAINT

Comes now Plaintiff William R. Rogers, by and through their attorney, and for their cause of action, states as follows:

### COUNT I

1. That at all times relevant, Plaintiff William R. Rogers ("Rogers") is a citizen and resident of Illinois, and has no criminal record, other than minor traffic tickets, for which no known statute disqualifies him from firearm ownership.

2. That Plaintiff Rogers has never been institutionalized in a mental institution, either voluntarily or involuntarily, has never been adjudicated as mentally defective or deficient, and no known laws, other than the FOID Card Act, at issue in this case, prohibit Plaintiff from lawfully possessing firearms, and in the case of the FOID Card Act, Plaintiff is only prohibited from possessing a firearm, if he has not been issued a FOID card.

3. That in Illinois, subject to certain narrow and inapplicable exceptions, in order to lawfully possess or acquire a firearm, one must possess a currently valid Illinois State Police

Issued Firearms Owners Identification Card, colloquially called a FOID.  Literally

millions of FOID cards have been issued and are currently valid in Illinois.

4. That in the absence of a FOID card being issued to the possessor of the firearm, there

exists a total ban on the possession of all firearms by residents of Illinois.

5. That Defendant Gregory Hacker ("Hacker") is the Chief of the Illinois State Police

Firearms Services Bureau, and is responsible for the processing of FOID card

applications and the issuance of FOID cards.

6. That Defendant Brad Wells ("Wells") is the Chief of Police of Wood River, Illinois, with

said law enforcement agency routinely arresting persons for possession of firearms

without a valid FOID card, and is sued in his official capacity.

7. That well over 30 days prior to filing this lawsuit, Plaintiff filed, using the online

computer system, for a FOID card, and paid the $10.00 fee, plus a processing fee not

authorized by statute.

8. That under the FOID Act, Defendant Hacker shall either approve or deny all applications

[for a FOID card] within 30 days from the date they are received.  430 ILCS 65/5.  This

has been the law since the late 1960s.

9. That while the 30 day time period may be a creature of state law, and Defendant may

well be in violation of it, it is not state law that this case is based on.  Rather, it is the

excessive and unreasonable delays, be they allowed under state law, or not, incurred in

the processing of the FOID card that is at issue.  In sum, while a 30 day time period to

process FOID cards, or other similar gun licenses, might be legitimate under the 2nd and

14th Amendment, there is no constitutionally legitimate reason that it should take more

than couple of weeks, at most, to issue a FOID card.  That while a 10, or even a 30 day

time period to conduct a background check may be reasonable, Defendant Hacker and the State of Illinois has totally abandoned its own time periods, and forced persons, like Plaintiff, to simply wait, unknown and unknowable periods of time, in many cases six months, in some cases, over a year, to conduct a background check that can literally be accomplished in about 10 minutes, and then, once the FOID card application is approved, the card issued, and the person decides to actually buy a firearm, there is still yet another official 3 day waiting period, that has again morphed into, often, another two week waiting period.

10. That in violation of 430 ILCS 65/5, Defendant has not either approved, or denied, Plaintiff's application for a FOID card within the 30 days allotted.

11. That in violation of the Second and Fourteenth Amendments, the State has not either approved, or denied, Plaintiff's application for a FOID card within any reasonable constitutionally allowed time frame.

12. That while, 430 ILCS 65/10, in theory, provides an administrative remedy for failure to timely process a FOID application, in truth and in fact, filing an administrative appeal for untimely FOID processing is a futile act, as the appeals are simply placed into paper folders, and there is no assigned Administrative Law Judge or other hearing officer to hear the appeals.  Instead, Defendant simply makes an ad hoc review of the appeal, if and when time permits, often resulting in months or years to review an appeal, such that it is no real remedy for Defendant failing to timely process the application.

13. That the delay complaint of is systemic, and not unique to Plaintiff, in that, at present, the officially stated FOID processing time is over 116 days, with many applications

remaining pending for 10 months, or more, all the time, the applicant may not lawfully
possess a firearm.

14. That while, officially, substantial portions of the application fee is placed into specific
funds used to fund and improve processing of FOID cards, in truth and fact, the State has
repeatedly raided these funds, to the tune of millions of dollars, placing same in general
revenue, used to fund unrelated programs.

15. That under the Second and Fourteenth Amendments, Plaintiff has a right to keep and bear
arms, at least, in his home, for private self defense.

16. In violation of this statute, Defendant has, at the same time, required a license to be
issued, in order to exercise a constitutional rights, while at the same time, operating a
system that does not timely and expeditiously provide for the issuance of said license,
resulting in more than a *de minimus* violation of the right to keep and bear arms.

17. That Plaintiff would, but for his fear of arrest, incarceration and jail, as well as his
peaceable and lawful nature, attempt to acquire and possess a firearm, without a FOID
card, but is not doing to, to avoid violation of purported law.

18. That were Plaintiff to possess a firearm, in his home, without a FOID card, Defendant
Wells would arrest him for same, and seize the firearm.

19. That Plaintiff wishes to possess a handgun, specifically, a .22 caliber revolver, similar to
the one at issue in *Heller*, for private self defense in his home.

20. That Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff humbly requests that this Honorable Court (1) enjoin Defendants
Hacker from failing to process Plaintiff's FOID application, and if Plaintiff is qualitied to
possess firearms under the Second Amendment, from failing to approve said application and

issuing Plaintiff same, and (2) enjoining Defendants Hacker and Wells from enforcing the

Illinois State FOID Card Act against Plaintiff, until such time as Defendant Hacker issues the

FOID card to Plaintiff, plus costs and attorney fees pursuant to 42 U.S.C. 1988, plus such other,

further and different relief as is allowed by law.

## COUNT II

1 – 20. Plaintiff adopts and incorporates paragraphs 1 through 20 of Count I.

21. That even if Defendants Hacker and Wells are enjoined from enforcing the FOID Card

Act, as to Plaintiff, until such time as Plaintiff is issued a FOID card, under Illinois law,

whether said firearm is bought from a officially licensed dealer or an unlicensed seller,

must run a background check on the buyer, using ONLY the FOID card.

22. That there is no mechanism, under Illinois law, to obtain a firearm or firearm background

check, without a FOID card, such that, even if Plaintiff were allowed to possess a firearm

without a FOID card, be could not acquire a firearm without a FOID card, from any

legitimate or legal source.

WHEREFORE, Plaintiff humbly requests that this Honorable Court enjoin Defendant Hacker

from requiring a FOID card for either a licensed or unlicensed seller to sell a firearm to

Plaintiff, plus costs and attorney fees pursuant to 42 U.S.C. 1988, plus such other, further and

different relief as is allowed by law.

## COUNT III

1   – 5.    Plaintiff adopts and incorporates paragraphs 1 through 5 of Count I.

6.   That per statute, of the funds paid for a FOID card "$6 of each fee derived from the issuance of Firearm Owner's Identification Cards, or renewals thereof, shall be deposited in the Wildlife and Fish Fund in the State Treasury; $1 of the fee shall be deposited in the State Police Services Fund and $3 of the fee shall be deposited in the State Police Firearm Services Fund." 430 ILCS 65/5

7.   Of the funds paid for a CCL, for a resident, "$120 shall be apportioned to the State Police Firearm Services Fund, $20 shall be apportioned to the Mental Health Reporting Fund, and $10 shall be apportioned to the State Crime Laboratory Fund."

8.   That Plaintiff has paid, in 2020, the $10 for a FOID card, and intends, once he has saved sufficient money to pay the fee, to apply for a FCCL, currently costing $150.00.  Plaintiff also intends to renew his existing FOID and planned FCCL, as is necessary.

9.   On its face, the charges for a FOID and a FCCL appear to be a mere fee used to process applications.  However, this is a farce.

10. As actually enforced, the charges are not a mere fee, but on closer examination clearly become a tax on constitutionally protected activity, that being the acquisition, possession and bearing of arms and ammunition.

11. That under the Second Amendment to the U.S. Constitution, as incorporated by the Fourteenth Amendment, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

12. That whatever the charges related to the issuance of FOID and FCCL could be, as actually used from 2015 through 2020, there are largely comprised of taxes, in that, the charges are well above that reasonably necessary to administer the various relevant statutes and/or programs (i.e FOID and/ or CCL).

13. That by express statute, (430 ILCS 65/5)

"… every applicant found qualified under Section 8 of this Act by the

Department shall be entitled to a Firearm Owner's Identification Card

upon the payment of a $10 fee. … $6 of each fee derived from the

issuance of Firearm Owner's Identification Cards, or renewals thereof,

shall be deposited in the Wildlife and Fish Fund in the State Treasury; $1

of the fee shall be deposited in the State Police Services Fund and $3 of

the fee shall be deposited in the State Police Firearm Services Fund."

14. That by express statute, (430 ILCS 66/60)

"An applicant for a new license or a renewal shall submit $150 with the

application, of which $120 shall be apportioned to the State Police Firearm

Services Fund, $20 shall be apportioned to the Mental Health Reporting

Fund, and $10 shall be apportioned to the State Crime Laboratory Fund."

15. That pursuant to 20 ILCS 2605/2605-595;

"(a) There is created in the State treasury a special fund known as the State

Police Firearm Services Fund. The Fund shall receive revenue under the

Firearm Concealed Carry Act and Section 5 of the Firearm Owners

Identification Card Act. …"

16.    That pursuant to 20 ILCS 2605/2605-595(b) "

"The Department of State Police may use moneys in the Fund to finance

any of its lawful purposes, mandates, functions, and duties under the

Firearm Owners Identification Card Act and the Firearm Concealed Carry

Act, including the cost of sending notices of expiration of Firearm

Owner's Identification Cards, concealed carry licenses, the prompt and efficient processing of applications under the Firearm Owners Identification Card Act and the Firearm Concealed Carry Act, the improved efficiency and reporting of the LEADS and federal NICS law enforcement data systems, and support for investigations required under these Acts and law. Any surplus funds beyond what is needed to comply with the aforementioned purposes shall be used by the Department to improve the Law Enforcement Agencies Data System (LEADS) and criminal history background check system."

17. Contrary to the plaint language of the statute, for the time period 2014 through 2019, a total of $13,210,268 was taken from the State Police Firearm Services Fund, from funds generated by FOID and FCCL license receipts, and transferred to the General Revenue Fund and a total of $15,296,510 was taken from the State Police Services Fund, from funds generated by FOID and FCCL license receipts, and transferred to the General Revenue Fund for a total of $28,506,778, or over five million dollars a year.  That there is no indication that this was a fluke, an accounting mistake or a onetime event, and appears certain to happen again for the 2020, 2021 and beyond fiscal years, in that, the State of Illinois Defendants are using the taxes generated by the FOID and FCCL charges to fund general revenues for the State of Illinois, and this is the official policy of the State of Illinois as expressed by its pattern and practice.

18. A state may not impose a charge for the enjoyment of a right protected by the constitution.

19. That by imposing said taxes, beyond those reasonably necessary to actually fund the FOID and FCCA programs, and instead are being used to fund general revenue programs, which, as a result, infringes upon the right to keep and bear arms, of Plaintiff and the proposed Plaintiff classes.

20. That Defendants had no legal right to demand money above the actual cost of processing for the FOID and/or FCCL.

Wherefore, Plaintiff and the Plaintiff class Humbly request that this Honorable Court enter judgment in Plaintiffs and (1) enjoin Defendants from collecting or using any funds paid by applicants for FOID cards and/or FCCL, to fund any program or operation unrelated to the actual processing and issuance of FOID cards and/or FCCL, (2) enjoining the transfer of any funds from the State Police Firearms Services Fund into any other fund, or into the general revenue of the State of Illinois, (3) enjoining Defendants from enforcing the FOID Act and/or the FCCA, until such time as the charges collected under said acts are limited to actual processing and administration costs of the FOID and FCCA, plus costs and attorney fees, pursuant to 42 U.S.C. 1988, and such other, further and different relief as is allowed by law.

### COUNT IV

1. Plaintiff adopts paragraph 1 of Count I.

2. That Plaintiff has a constitutional right, under the Second and Fourteenth Amendments, to possess a handgun, at least, inside his home, for self defense. *District of Columbia v. Heller*, 554 US 570 - Supreme Court 2008.

3. Plaintiff who is not financially well off, and does not presently own any firearms, as he cannot afford most handguns on the market.

4.  That he has, however, discovered that certain handguns retail for around $100.00, which would be within her budget for a new handgun.

5.  However, these "budget minded" handguns are generally made of a zinc alloy and will deform is heated to a certain level, not possible to attain by normal, or even abusive use of the firearm.

6.  That there is no law applicable in Illinois that prohibits mere possession or use of a handgun made out of zinc alloy or any other metal, nor does it prohibit the purchase and sale of handguns by non federally licensed persons, however, the statute acts as a total ban on new, modern and safe zinc alloy firearm.

7.  720 ILCS 5/24-3(H), prohibits a person,

    "While holding any license as a dealer, importer, manufacturer or pawnbroker under the federal Gun Control Act of 1968, manufactures, sells or delivers to any unlicensed person a handgun having a barrel, slide, frame or receiver which is a die casting of zinc alloy or any other nonhomogeneous metal which will melt or deform at a temperature of less than 800 degrees Fahrenheit."

8.  It is generally unlawful for a person who does not hold any license as a dealer, importer, manufacturer or pawnbroker under the federal Gun Control Act of 1968, to manufacture, sell or deliver to any unlicensed person a handgun.  Thus, the most common way to acquire a lawful handgun is to buy one from a licensed dealer.

9.  That while the statute has been on the books for several years, recently, the Illinois State Police has been notifying dealers, distributors and manufactures who make and sell such products that they are not allowed in Illinois, and thus, they have disappeared from dealer shelves, and thus, the lowest cost handguns have been driven from the market in Illinois,

by Defendants, and are no longer available for purchase by Plaintiff, but would be so available, but for this statute.

10. That the statute itself has nothing to do with consumer safety, or any legitimate governmental function, but rather, was simply designed to keep affordable handguns off the market in Illinois, based on the incorrect belief that there was no constitutional right to keep and bear handguns.

11. As a proximate cause of the foregoing, Plaintiff has been unable to lawfully purchase, at a properly licensed dealer, a handgun of his choice, that she can actually afford, forcing Plaintiff to remain unarmed, when in the absence of the statute, Plaintiff would be able to purchase her choice of affordable new lawful handguns.

12. That the handguns at issue in this case are common and available throughout the United States, and constitute arms in common use at this time.  In fact, the overwhelming majority of the .22 caliber revolvers produced or sold in the United States, are banned from sale in Illinois, under this Statute, as they contain zinc.

13. That as a result of the foregoing, Plaintiff's rights under the Second and Fourteenth Amendments have been violated.

14. Plaintiff brings this action under 42 U.S.C. 1983, for violation of her civil rights.

WHEREFORE, Plaintiff humbly requests that this Honorable Court declare and hold 720 ILCS 5/24-3(H) unconstitutional, and permanently enjoin its enforcement, plus an award of costs and attorney fees, pursuant to 42 U.S.C. 1988.

# COUNT V

1. That at all times relevant, Plaintiff William R. Rogers ("Rogers") is a citizen and resident of Illinois, and has no criminal record, other than minor traffic tickets, for which no known statute disqualifies him from firearm ownership.

2. That Plaintiff Rogers has never been institutionalized in a mental institution, either voluntarily or involuntarily, has never been adjudicated as mentally defective or deficient, and no known laws, other than the FOID Card Act, at issue in this case, prohibit Plaintiff from lawfully possessing firearms, and in the case of the FOID Card Act, Plaintiff is only prohibited from possessing a firearm, if he has not been issued a FOID card.

3. That in Illinois, subject to certain narrow and inapplicable exceptions, in order to lawfully possess or acquire a firearm, one must possess a currently valid Illinois State Police Issued Firearms Owners Identification Card, colloquially called a FOID.  Literally millions of FOID cards have been issued and are currently valid in Illinois.

4. That in the absence of a FOID card being issued to the possessor of the firearm, there exists a total ban on the possession of all firearms by residents of Illinois.

5. That Defendant Gregory Hacker ("Hacker") is the Chief of the Illinois State Police Firearms Services Bureau, and is responsible for the processing of FOID card applications and the issuance of FOID cards.

6. That under Illinois law, there exists a 72 hour waiting period in order to purchase any firearm.

7. Under the Illinois Administrative Code,

> "Section 1235.90  Response Procedures

> The Department shall provide, during the initial dealer inquiry, an approval,
> denial, or conditional denial of the transfer.  The time period for the Department
> to respond shall begin at the time the inquiry is received.  When the Department
> provides a conditional denial, the dealer shall not transfer the firearm until an
> approval is provided by the Department or the length of time prescribed in
> Section 24-3 of the Criminal Code of 1961 [720 ILCS 5/24.3] has been
> exceeded."

8. Thus, under a plain language reading of Section 1235.90, a licensed dealer may transfer a firearm to a purchaser, like Plaintiff Rogers, as long as the transaction (a) has not been disapproved, and (b) the Department has had at least 72 hours to process the transaction.

9. That contrary to its own administrative code, Defendant Hacker has issued official guidance, in the form of official FAQs, which state, in relevant part,

> "The actual transfer of the firearm cannot take place until there is an approval
> from the FTIP system, regardless of when the agreement was reached. If the FFL
> receives a transaction number, they cannot complete the transfer until they receive
> an approval."

10.  That the official state regulation and the FAQ are irrevocably in conflict with each other, thus creating an actual controversy.

11. That many, or most, licensed dealers will not actually transfer a firearm, including to Plaintiff, even with a valid FOID card, after 72 hours, unless there is express approval from Defendant Hacker, for fear or prosecution and arrest, resulting in Plaintiff's rights being delayed again.

12. That this Court has subject matter jurisdiction to resolve this, pursuant to 28 USC 1367(a), as this is a civil action of which the district courts have original jurisdiction, therefore the district courts have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

13. That Plaintiff seeks declaratory relief, specifically that Plaintiff may, without violation of Illinois waiting period law by either party to the transaction, acquire a firearm from a licensed firearm dealer at least 72 hours after the dealer submits the transaction to Defendant Hacker for approval, as long as said transaction has not been expressly denied or disapproved.

WHEREFORE That Plaintiff seeks declaratory relief, specifically that Plaintiff may, without violation of Illinois waiting period law by either party to the transaction, acquire a firearm from a licensed firearm dealer at least 72 hours after the dealer submits the transaction to Defendant Hacker for approval, as long as said transaction has not been expressly denied or disapproved.

Dated:  October 22, 2020                          Respectfully Submitted,

                                                  William Rogers,

                                                  By:S/Thomas G. Maag

                                                  Thomas G. Maag
                                                  Maag Law Firm, LLC
                                                  22 West Lorena Avenue
                                                  Wood River, IL  62095

                                                  Phone:  618-216-5291
                                                  tmaag@maaglaw.com