# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| WILLIAM R. ROGERS, | ) | |
| --- | --- | --- |
| Plaintiff, | ) | |
| vs. | ) | Case No. 20-cv-1116 |
| GREGORY HACKER, | ) | |
| Defendant. | ) | |

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

This matter comes before the Court on the Defendant's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 54) and the Defendant's Motion to Stay Discovery (Doc. 55). Both motions have been briefed and are ripe for consideration.

## I. BACKGROUND

Plaintiff's First Amended Complaint ("Complaint") (Doc. 33) alleges that Rogers is a resident of the State of Illinois and meets all of the qualifications under the "Firearm Owners Identification ("FOID") Card Act, 430 ILCS 65/1, *et. seq.*, which establishes a pre-requisite process for any Illinois resident to purchase, own, or possess a firearm. Under the FOID Act, the State of Illinois must either approve or deny applications for a FOID Card within 30 days. 430 ILCS 65/5. (Doc. 33. ¶7) Plaintiff complains that he did not receive his FOID Card within that time period and that "Hacker waited until he was

actually served with summons and process in this case . . . [and then] immediately issued the FOID card, in an effort to moot the case . . ." (Doc. 33, ¶ 9). According to Rogers Complaint, Hacker's actions violate the Second and Fourteenth Amendments. In Count II, Rogers seeks to enjoin Hacker from "failing to process Plaintiff's Concealed Carry application within 60 days of receipt of said application". (Doc. 33, P.9) In Count III, Rogers, on his own behalf and the "Plaintiff Class," alleges that Hacker collects and improperly transfers to other state-administered funds fees paid by applicants for FOID cards and Concealed Carry Licenses and, as such, amounts to a "charge for the enjoyment of a [constitutional] right" in violation of the Second and Fourteenth Amendments. (Doc. 33, ¶ 11-13). In Count IV, Rogers alleges that 720 ILCS 5/24-3(H), which prohibits a firearm dealer from selling to a private individual a handgun consisting of certain parts made of zinc alloys or metals that will deform at less than 800 degrees Fahrenheit, is unconstitutional in that it prohibits those with meager finances from purchasing an otherwise affordable handgun. (Doc. 33, ¶ 11). Rogers seeks a declaration that 720 ILCS 5/24-3(H) is unconstitutional. In Count VI, Rogers alleges that Illinois' background checks have resulted in delays such that Federal law, which proscribes transfers of a firearm to an individual after the passage of 30 days following the date that his or her background check has been conducted, operates to unconstitutionally interfere with that individual's right to bear arms. Rogers seeks to enjoin Hacker from "enforcing any ban or prohibition on the transfer of a firearm" after the passage of 72 hours unless specifically "disapproved." (Doc. 33 ¶¶ 20-23).

Hacker moves to dismiss "all of Plaintiff's claims because: (1) Plaintiff lacks standing;

(2) Count II is not ripe; (3) the Eleventh Amendment bars Plaintiff's supplemental claim in Count V; (4) Defendant Hacker is an improper party; (5) qualified immunity bars Count I; (6) Section 24-3 is constitutional; and (7) any government delay in processing background checks does not impose a substantial burden on Second Amendment Rights." (Doc. 54)

## II. DISCUSSION

### A. Standing and Ripeness under Rule 12(b)(1)

Hacker claims that Rogers lacks standing to challenge FOID card fee, concealed carry licensing fee, and the constitutionality of Section 24-3. More specifically, Hacker argues that Roger's allegations that the fees charged are "largely comprised of taxes" in amounts above that which is reasonably necessary to the administration of the programs are without support and are insufficient to demonstrate that he has or will be harmed, along with others in the class in future years. (Doc. 54, P. 7).

A Rule 12(b)(1) motion challenging subject-matter jurisdiction questions the very power of the court to hear a case, *Morrison v. Nat'l Australia Bank, Ltd.* 561 U.S. 247, 254 (2010), because "Article III of the Constitution limits the exercise of judicial power to 'cases' and 'controversies.'" *Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 239, (1937). "It goes without saying that those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Art. III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons,* 461 U.S. 95, 101 (1983).

In issue here is an Illinois law that imposes on its citizens the requirement of acquiring

3

and possessing a valid FOID card before owning or purchasing a firearm or ammunition. 430 ILCS 65/2(a)(1). The Department of the State Police shall either approve or deny any initial application for a FOID card within 30 days. In Count I, Rogers provides a large array of allegations, but boiled down they suggest that he has been deprived of the timely issuance of a FOID card under 430 ILCS 65/5 due to "systemic" and "unreasonable delays" brought about by Hacker's "abandon[ment]" of applicable time periods and reason. (Doc. 33, ¶¶ 8, 10, 13). He also alleges efforts on the part of Hacker to create an "unlawful scheme to violate the Second and Fourteenth [A]mendments and to delay as much as practical, the issuance of FOID and concealed carry licenses." (*Id* a ¶18). Further, he asserts that Hacker "has personally seen to it that employees and contractors responsible for the issuance of FOID cards have been told not to come into work for large periods of time, and to not process applications." (Doc. 33, ¶ 15) More to the point, Rogers alleges in Count I that only his filing and service of the lawsuit prompted Hacker, in an attempt to render the issue moot, to allow the issuance of the FOID card to Rogers. (*Id* at ¶17-18). Rogers only requests relief in the form of "$5,000.00, plus attorney's fees pursuant to 42 U.S.C. 1988." (*Id.*).[1]

To establish standing, "a plaintiff must show (1) injury in fact, meaning an invasion of a legally protected interest that is concrete and particularized, actual or imminent, and

---

[1] Defendant Hacker does not assert that Rogers' claim has been "mooted" by the issuance of a FOID card. "[S]o long as the plaintiff has a cause of action for damages, a defendant's change in conduct will not moot the case. Even then, it is not clear how often courts will find a case mooted: 'It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice' unless it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 608–09, (2001) (quoting *Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000).

4

not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of such that the injury is fairly traceable to the defendant's actions; and (3) that a favorable decision is likely to redress the injury." *Tobin for Governor v. Illinois State Bd. of Elections*, 268 F.3d 517, 527–28 (7th Cir. 2001). *See also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, (1992); *Sierakowski v. Ryan*, 223 F.3d 440, 442–43 (7th Cir. 2000). "With respect to the injury in fact requirement, the plaintiff must establish that he has sustained or is immediately in danger of sustaining some direct injury." *Tobin for Governor*, 268 F.3d at 527-28. *See Lyons*, 461 U.S. at 101–02, ("Abstract injury is not enough."); *Lyons*, 461 U.S. at 101.

Certainly, the ownership of certain firearms is a concrete and particularized legally protected interest under the Second Amendment. *See generally D.C. v. Heller*, 554 U.S. 570, 634 (2008); *People v. Chairez*, 2018 IL 121417, ¶ 26, 104 N.E.3d 1158, 1168 (Ill. 2018). Hacker does not argue otherwise. From the pleadings, it is clear that Rogers adequately pleads the existence of legally protected interest. Rogers does not, however, adequately allege injury other than to say that there was a delay which prevented him from purchasing a firearm. It is conceivable that delay, in and of itself, may result in or even bring about injury, but Rogers does not set forth in his complaint the nature of the injury he suffered as a result of any delay. A litigant must demonstrate an injury which is "real, not imaginary; concrete, not abstract; apparent, not illusory; and demonstrable, not speculative." *J.N.S., Inc. v. State of Ind.*, 712 F.2d 303, 305 (7th Cir. 1983). Count I of the Complaint falls short and should be dismissed.

Count II of the First Amended Complaint seeks injunctive relief against Hacker to

prevent him from failing to issue Rogers' Concealed Carry permit within the 60-day period required under Illinois law. Rogers, at the time of the filing of the Complaint, only "intends to apply for an Illinois Concealed Carry License once he is reasonably confident he can safely pass the shooting test." (Doc. 33, ¶17). Rogers does allege that he was not able to practice so that he can "ultimately take and pass the proficiency test and that the current state of the commercial market is delaying plans to do so." (Doc. 33). He also pleads that Hacker "is claiming to take an average processing time of 160 days" but does not allege the existence of any direct injury given that he has not applied for the license. "It is insufficient that an actual controversy may occur in the future; it must presently exist in fact." *Id*. Here, Rogers allegations contained in Count II are inadequately pled to establish subject matter jurisdiction, and Count II should be dismissed.

Likewise, "[o]ne aspect of the case-or-controversy requirement is ripeness", *Amling v. Harrow Industries, LLC*, 943 F. 3d 373, 377 (7th Cir., 2019). "Ripeness and other justiciability requirements bar a federal court from deciding a question that depends on so many future events that a judicial opinion would be 'advice about remote contingencies.'" *Id*. "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotations omitted).

Hacker argues that the claim contained in Count II is not ripe and, therefore, not justiciable. The Court agrees. Here, again, Roger has not yet applied for his Concealed Carry permit. While he alleges that he will apply at some time in the future, he may or

may not follow through with that plan. And any delay in processing of his application, should he decide to apply, may or may not occur. As such, there is presently no "case or controversy" for jurisdictional purposes, and the claims contained in Count II should be dismissed on the grounds of ripeness.

In Count III, Rogers generally alleges that the funds generated by fees charged to applicants for FOID cards and Concealed Carry permits is required under 430 ILCS 65/5 to be deposited into the "State Police Firearm Services Fund."(Doc. 33, ¶¶ 6-7). He goes on to allege that in the years 2014-2019, these funds amounting approximately 5 million dollars annually were removed from that fund and sent into the state's general fund. (Doc. 33, ¶ 17). Rogers asserts that the fees charged for these licensures is effectively rendered to be a tax on the "enjoyment of a right protected by the [C]onstitution." Hacker responds by arguing that Rogers lacks standing because he paid only a $10 fee for the FOID card in 2020 and there is no allegation that the funds were misappropriated in that year. Rather, the Complaint only suggest that it "appears certain to happen again for the 2020, 2021 and beyond fiscal years." (Doc. 33, ¶ 17).

There is no certainty that the alleged misappropriation of funds occurred in 2020 — the year that the parties agree Rogers paid his $10 fee for the FOID card. Nor does Rogers allege that his FOID card fee is in immediate danger of being misdirected to the general fund. And, of course, there is no contention by Rogers that he has paid a fee for a concealed carry permit. So, Rogers does little more than forecast without factual enhancement or support that his FOID fee will be misappropriated because others in past years have suffered such an injury. However, "[p]ast exposure to illegal conduct

7

does not in itself show a present case or controversy." *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974). Thus, again, Roger's Complaint fails to establish that he has or is about to suffer an "injury in fact" which is a precursor to a determination that there is a "case or controversy" for the purposes of subject matter jurisdiction. Accordingly, Rogers does not sufficiently plead that he at present has standing to bring the claim as set forth in Count III of the Complaint. Count III should be dismissed.

**B. Pleading and Dismissal Under Rule 12(b)(6)**

Hacker moves for dismissal of the Complaint on several bases, including that Hacker is not a proper party, that he enjoys qualified immunity, and that § 24-3(A)(h) of the Illinois Criminal Code is not unconstitutional as Rogers contends.

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009). Rule 8 does not require "detailed factual allegations," but "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. at 678. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* Finally, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

"When reviewing a Rule 12(b)(6) motion to dismiss, the Court construes the complaint in the light most favorable to the nonmoving party, accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in the non-movant's favor." *Kirsch v. Brightstar Corp.*, 968 F. Supp. 2d 931, 936 (N.D. Ill. 2013). *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

**Hacker as a Proper Party**

First, Hacker argues that Rogers has failed to sue the proper party and, in support of this argument, asserts that "Hacker is not responsible for the administration of the FOID Card Act." (Doc. 54, p. 16). This allegation is itself not only a legal conclusion, it is also in direct opposition to Roger's assertion that "under the FOID Act, Defendant Hacker shall either approve or deny all applications." (Doc. 33, p. 2). Further, Hacker offers nothing by way of extrinsic evidence that Hacker is not a proper party. However, Rogers also provides the "factual enhancement" that "Defendant Hacker and his predecessor" are involved in an "unlawful scheme to violate the Second and Fourteenth Amendments, and to delay as much as practical, the issuance of FOID and concealed carry licenses." (Doc. 33, p. 5) *See Iqbal*, 556 U.S. at 678. As courts are obliged to accept as true all well-pleaded facts for the purposes of a motion to dismiss, the Court finds that Rogers has adequately pleaded Hacker's responsibility.

**Hacker's Qualified Immunity**

Next, Hacker argues that he enjoys qualified immunity as to Count I of the Complaint. Hacker urges dismissal under 12(b)(6) because he believes that Rogers has "failed to

identify a violation of a clearly established constitutional right." (Doc. 54, p. 18). However, because of the uniqueness of the defense, the necessity of pleading facts that go to the issue of qualified immunity are somewhat relaxed at the initial pleading stage:

> [I]t appears that in some cases, a complaint may be dismissed under Rule 12(b)(6) on qualified immunity grounds.... In that case, while the plaintiff may have stated a claim, it is not one "upon which relief can be granted" and a court may properly address this purely legal question under Rule 12(b)(6). However, in many cases, the existence of qualified immunity will depend on the particular facts of a given case. In those cases, the plaintiff is not required initially to plead factual allegations that anticipate and overcome a defense of qualified immunity.... The district court then has a variety of means at its disposal to move the case incrementally forward in order to address the qualified immunity issue at the earliest possible stage, so that a defendant who is immune from suit is not put through the time, effort and expense of defending himself against a claim upon which, ultimately, no relief can be granted.

*Reed v. Palmer*, 906 F.3d 540, 548–49 (7th Cir. 2018).

Justice Easterbrook is more direct: "Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground of dismissal." *Jacobs v. City of Chicago*, 215 F.3d 758, 775 (7th Cir. 2000) (J. Easterbrook, concurring).

This matter stands at the initial pleading stages where Hacker has not yet formally pled the affirmative defense of qualified immunity. Certainly, evidence gathering and more appropriate briefing will become necessary. Accordingly, the motion to dismiss as it is directed on the question of qualified immunity should be denied without prejudice.

**The Constitutionality of § 24-3(A)(h) of the Illinois Criminal Code.**

Next, Hacker argues that Count IV of the Complaint should be dismissed because, contrary to the allegations of the Complaint, § 24-3(A)(h) of the Criminal Code is not unconstitutional. This aspect of Hacker's motion can be dealt with in short order.

In pertinent part, § 24-3(A)(h) provides that a dealer violates the Federal Gun Control Act of 1968 when he "sells or delivers to any unlicensed person a handgun having a barrel, slide, frame or receiver which is a die casting of zinc alloy or any other nonhomogeneous metal which will melt or deform at a temperature of less than 800 degrees Fahrenheit." 720 Ill. Comp. Stat. Ann. 5/24-3. Rogers claims that handguns covered by this provision are typically lower cost, and the prohibition against a dealer selling such weapons in Illinois violates the Constitution because it deprives the less affluent Rogers and those like him access to firearms of their choosing. Hacker dedicates much of his argument to the question of the constitutionality of § 24-3(A)(h). But, at this stage, the question is one of whether Rogers has met sufficiently the pleading standards of Rule 12(b)(6), which are recognized as satisfied if factual allegations raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555. *See Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely"). For now, the Court finds that, relative to Count IV, Rogers has satisfied, however narrowly, the pleading standards required of him under Rule 12(b)(6).

## C. Hacker's Sovereign Immunity

In Count V of the Complaint, Rogers "seeks declaratory relief, specifically that Plaintiff may, without violation of Illinois waiting period law by either party to the transaction, acquire a firearm from a licensed firearm dealer at least 72 hours after the dealer submits the transaction to Defendant Hacker for approval, as long as the said transaction has not been expressly denied." (Doc. 3, p.18). Rogers claims that Hacker has now "issued official guidance" suggesting that the transfer of a firearm is prohibited until approval is received from the "Firearm Transfer Inquiry" (FTIP) despite Illinois law's requirement (according to Roger's interpretation) that the transfer inquiry be approved or declined within 72 hours. (Doc. 33, ¶ 9). Rogers claims that this court has supplemental jurisdiction by reason of 28 U.S.C. 1367(a).

Count VI of the Complaint largely follows Count V but seeks injunctive relief against Hacker in his official capacity to prevent him "from enforcing any ban or prohibition on the transfer of a firearm . . .more than 72 hours after the running of the buy's background check, unless Defendant actually disapproves the transaction . . ." (Doc. 33, p. 20). The "ban" or "prohibition" refers to the "official guidance" of Hacker noted above. Hacker argues that Counts V and VI should be dismissed because he is protected by sovereign immunity under the Eleventh Amendment to the Constitution.

The language of the Eleventh Amendment seems simple enough: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. "[B]ut eleventh

amendment jurisprudence has not precisely followed the text of the amendment." *Kroll v. Bd. of Trustees of Univ. of Illinois,* 934 F.2d 904, 906 (7th Cir. 1991). The Supreme Court has broadened the amendment's language in some respects and narrowed it in others. "Suits against state officials are sometimes permissible, and the key inquiry is whether the state is the real, substantial party in interest." *Id.* at 907. (internal quotation omitted). "Personal-capacity suits raise no eleventh amendment issues even though an official might have the requisite nexus to the state in order for his or her actions to be labelled state action." *Id*. "Official-capacity suits, in contrast, are deemed to be against the entity of which an officer is an agent." *Id.* "Under an exception to the general rule, however, official-capacity actions may not be barred by the eleventh amendment insofar as they request prospective relief—i.e., an injunction or a declaratory judgment and monetary damages that are 'ancillary' to either." *Id.* at 908.

Looking back to the Complaint, Count V and Count VI are directed to Hacker himself, and it is his "official guidance" that is alleged to serve as the basis for the sought-after relief. Rogers complains that Hacker ignored Illinois law when issuing his "official guidance." But it is here that Rogers claim in both Count V and Count VI gets snagged because, "[a] federal court's grant of relief against state officials on the basis of *state law*, whether prospective or retroactive, does not vindicate the supreme authority of the law." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) (emphasis added). "On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such

13

a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment." *Id.* As such, the immunity extended to the states by the Eleventh Amendment applies to a claim that state officials violated state law in carrying out their official responsibilities even if brought to a federal court under pendent jurisdiction. Accordingly, Count V and Count VI should be dismissed with prejudice.

### D. Defendants' Motion to Stay

Hacker moves to stay the discovery in this matter because he "challenges Plaintiff's standing to bring his claims." (Doc. 55, ¶ 4) and "has raised the issue of qualified immunity as a defense which is more appropriately resolved prior to discovery." (Doc. 55, ¶ 5).

The filing of a motion to dismiss does not automatically stay discovery. *SK Hand Tool Corp. v. Dresser Indus.*, 852 F.2d 936, 945 (7th Cir. 1988). In most cases the pendency of a dispositive motion is not the sole reason for granting the stay. *Syngenta Seeds, Inc. v. BTA Branded, Inc.*, No. 05 C 6673, 2007 WL 3256848, at *1 (N.D.Ill. Nov. 1, 2007). "Instead, a stay of discovery is generally appropriate only when a party raises a potentially dispositive threshold issue such as a challenge to a plaintiff's standing, *see U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 79–80, 108 S.Ct. 2268, 101 L.Ed.2d 69 (1988)), or pending resolution of qualified immunity claims." *New England Carpenters Health & Welfare Fund v. Abbott Lab'ys*, No. 12 C 1662, 2013 WL 690613, at *1 (N.D. Ill. Feb. 20, 2013) (citing *Landstrom v. Illinois Dep't of Children & Family Servs.*, 892 F.2d 670, 674 (7th Cir.1990); and *Ashcroft v. Iqbal*, 556 U.S. 662, 685, 129 S.Ct. 1937, 173

L.Ed.2d 868 (2009) ("The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including avoidance of disruptive discovery.") (internal citation and quotation marks omitted)).

While Rule 26 gives the Court "authority to stay discovery, this authority must be exercised so as to 'secure the just, speedy and inexpensive determination of every action.'" *Builders Ass'n of Greater Chicago v. City of Chicago*, 170 F.R.D. 435, 437 (N.D.Ill.1996) A motion to stay discovery is not necessarily warranted simply because a potentially dispositive motion is pending or threatened. In sum, "[a]lthough stays on discovery are sometimes appropriate, this court disfavors them because they bring resolution of the dispute to a standstill." *Coss v. Playtex Prods., LLC*, No. 08 C 50222, 2009 WL 1455358, at *1 (N.D.Ill. May 21, 2009).

While a stay in this matter may have arguably been appropriate during the pendency of the motion to dismiss, issues of standing and Hacker's claim to qualified immunity have been resolved by this order. To grant Hacker's motion to stay would serve only to disrupt the progress of this matter and keep it in a state of suspension while the pleading hurdles are cleared by the parties. There is no just reason to further impede the litigation process at this time, and the motion to stay (Doc. 55) should be denied.

### III. CONCLUSION

For these reasons, Defendant's Motion to Dismiss (Doc. 53) is GRANTED in part and DENIED in part. Counts I, II and III of the First Amended Complaint (Doc. 33) are hereby DISMISSED without prejudice. Counts V and VI are DISMISSED with prejudice. Defendants Motion to Dismiss is otherwise DENIED. Plaintiff may file within twenty-

one days his Second Amended Complaint. Defendant' Motion to Stay (Doc. 55) is DENIED.

**SO ORDERED.**

Dated: July 1, 2021

_____
DAVID W. DUGAN
United States District Judge